IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DAMIEN ROOKS,<br><br>Plaintiff,<br><br>v.<br><br>NORTH CAROLINA DEPARTMENT OF ADULT CORRECTION,<br><br>Defendant. | 1:24-CV-823-DAB |

# **OPINION**

Plaintiff Damien Rooks alleged disability discrimination in violation of the Americans with Disabilities Act of 1990 ("ADA") (Count I), wrongful discharge in violation of North Carolina Public Policy (Count II), and a violation of Section 504 of the Rehabilitation Act of 1973 (Count III) against the North Carolina Department of Adult Correction ("Defendant"). *Complaint*, D.E. 1 (Oct. 1, 2024). Count II was dismissed by the Court following Defendant's *Motion to Dismiss*, D.E. 19 (Feb. 13, 2025), and Defendant has now moved for summary judgment as to the remaining Counts I and III. *Motion for Summary Judgment*, D.E. 49 (June 1, 2026). This Court grants summary judgment for both.

## FACTUAL BACKGROUND

The record presently reflects the following timeline of events. Defendant North Carolina Department of Adult Correction operates several correctional institutions in North Carolina. *See App'x to Defendant's Motion for Summary Judgment*, *Exhibit 2 – Declaration of Demya Andrews*, D.E. 51-9 (June 1, 2026). These facilities are spread across North Carolina, and each facility has its own hiring staff that handles each facility's individual hiring needs. *Id.* at pp. 2–3.

Beginning in 2021, Plaintiff Damien Rooks served as a correctional officer at Roanoke River Correctional Institute ("RRCI"), one of Defendant's correctional

facilities. *Id.*, *Exhibit 1-F – Prior Conditional Offer*, D.E. 51-7 (June 1, 2026). Rooks worked in the facility for about a month before one day failing to report for duty without notifying anyone of his absence. *Id., Exhibit 1-G – Voluntary Resignation Without Notice*, D.E. 51-8 (June 1, 2026). After failing to report for duty for an additional month, Rooks' position was formally terminated. *Id.* at p. 2. Following this "no call/no show" event at RRCI, Rooks immediately began a position as a correctional officer at Virginia Department of Corrections. *Id.*, *Exhibit 1-D – Professional Reference Check*, D.E. 51-5 (June 1, 2026). He served in this role for about five months before once more failing to report for duty and failing to inform his employer of his absence. *Id.*

In the latter half of 2022, Rooks was diagnosed with Human Immunodeficiency Virus ("HIV"). *Plaintiff's Response in Opposition to Summary Judgment*, *Exhibit A – Damien Rooks Depo. Excerpts*, D.E. 54-1, at p. 6 (June 22, 2026). Through continued care and treatment, he lives a relatively normal life and reports little to no physical issues from the condition. D.E. 54, at p. 2.

On February 28, 2023, Rooks attended a job fair hosted by Defendant located at Randolph Correctional Institution, another of Defendant's facilities. *Id.* at p. 3. Because of the COVID-19 pandemic, the Randolph facility was short-staffed, so job fairs were held to expedite hiring and onboarding. *Defendant's Reply to Plaintiff's Response in Opposition to Motion for Summary Judgment, Exhibit D – Excerpts from Michael Parson's Deposition*, D.E. 57-5, at p. 4 (June 30, 2026). At the fair, Rooks spoke with Demya Andrews, who worked for Defendant as a hiring specialist. *Exhibit 2 – Declaration of Demya Andrews*, D.E. 54, at p. 3. During this conversation he filled out an application for a correctional officer position. D.E. 54, at p. 3. Rooks was provided a conditional offer of employment the same day. *Exhibit 1-A – Conditional Offer,* D.E. 51-2, at p. 1. This offer noted that it could "be withdrawn at any time." *Id.* And when he received this offer, he was also informed that because of his criminal history indicated on his application, Human Resources would need "to do further research before making a final decision on whether he was eligible for the job." *Amended Complaint*, D.E. 15, at p. 4 (Dec. 30, 2024).

Rooks was also provided with two medical forms to complete. He completed the Form F-1, "Medical History Statement" and indicated on it that he has HIV. *Sealed App'x to Motion for Summary Judgment*, *Exhibit 1-B – Rooks' Form F-1,* D.E. 52-2, at p. 2 (June 1, 2026). He then met with his physician the same day to have his physician fill out the Form F-2, "Medical Examination Report." *See Id., Exhibit 1-C – Rooks' Form F-2,* D.E. 52-3. After reviewing the F-1 and performing a medical examination, the physician marked that Rooks was "able to perform the

essential job and training functions" for the position he was conditionally offered. *Id.* at p. 2.

Defendant also ran a background check on Rooks. *See Exhibit 2-A – Rooks' Criminal History,* D.E. 51-10; *Exhibit 1-D – Rooks' Professional Reference Check,* D.E. 51-5. One of Defendant's employees performed the reference check on February 28th, and she documented that Rooks' previous employer—Virginia Department of Corrections—marked Rooks as ineligible for rehire due to his no call/no show when he resigned. D.E. 51-5, at p. 1.

The next day, Rooks went to Defendant's office in Raleigh, North Carolina to complete onboarding. D.E. 54-1, at p. 10. There, he again met Ms. Andrews alongside a new Defendant employee, Lisa McMillan. D.E. 51-9, at p. 2; *Exhibit 3 – Declaration of Lisa McMillan*, D.E. 51-11, at p. 2. The two handled processing documents, reviewing forms, evaluating Rooks' background check, and performing fingerprinting. D.E. 51-11, at p. 2; D.E. 51-9, at p. 2. Included in the forms Rooks provided were the Forms F-1 and F-2, which indicated his HIV status. *See* D.E. 52-2, at p. 2; D.E. 52-3, at p. 2. Rooks had a criminal record that included charges of assault with a deadly weapon, resisting a public officer, and simple assault, as well as a conviction of assault on a female. D.E. 51-10, at pp. 1–2. Rooks had the same criminal history when he was originally employed with Defendant in 2021. *Id.* While reviewing the background check, Ms. Andrews made marks next to Rooks' non-traffic offenses. *Id.*

Rooks asserts that, after Andrews and McMillan reviewed his paperwork and talked privately, McMillan put on gloves and became standoffish during the fingerprinting. D.E. 54-1, at p. 12. It was Defendant's practice for their employees to put on gloves for fingerprinting, and McMillan always did so. D.E. 51-11, at p. 3. Rooks further alleges that during the fingerprinting McMillan stood several feet away from him. D.E. 54-1, at p. 12. After the onboarding was complete, Rooks left and awaited confirmation that he had formally been hired by Defendant. D.E. 54, at p. 5. Unbeknownst to Rooks, Ms. McMillan emailed staff at Randolph later that day and instructed them to send a withdrawal letter to Rooks because of an "unfavorable background check." *Exhibit J – Email from McMillan*, D.E. 54-10, at p. 2.

Rooks was ultimately informed that his conditional offer was withdrawn by a letter dated March 2, 2023. *Exhibit 1-E – Withdrawal Letter from Warden Parsons,* D.E. 51-6. The letter, signed by Warden Michael Parsons, identified that the withdrawal was "based on an unfavorable background check." *Id*.

After exhausting claims through the EEOC, Rooks filed this lawsuit. At this stage, Rooks has two remaining two claims: (Count I) disability discrimination under the ADA and (Count III) violation of Section 504 of the Rehabilitation Act of 1973. Defendant seeks summary judgment as to both.

## DISCUSSION

### I. Motion for Summary Judgment

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Zahodnick v. IBM*, 135 F.3d 911, 913 (4th Cir. 1997). Because substantive law determines materiality, only facts that "might affect the outcome of the suit under the governing law" are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The movant bears the initial burden of demonstrating "the absence of any genuine issues of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (citation modified). Once that burden is met, the nonmoving party must "present evidence from which a jury might return a verdict in his favor." *Anderson*, 477 U.S. at 257. When making a summary judgment determination, the court must view the evidence and all justifiable inferences in the light most favorable to the non-moving party. *Zahodnick,* 135 F.3d at 913. While all justifiable inferences are drawn in the favor of the non-movant, he "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 248 (citation modified).

#### A. Count I: Disability Discrimination under the ADA

The Court first analyzes Rooks' disability discrimination claim under the ADA. The ADA prohibits an employer from discriminating "against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To succeed on a claim of disability discrimination under the ADA, a plaintiff must prove "(1) that she has a disability, (2) that she is a 'qualified individual' for the employment in question, and (3) that her employer discharged her (or took other adverse employment action) because of her disability." *Jacobs v. N.C. Admin. Office of the Cts.*, 780 F.3d 562, 572 (4th Cir. 2015) (citation modified).

At summary judgment, even in the absence of direct evidence of discrimination, a plaintiff's ADA claim may survive through the *McDonnell Douglas* burden-shifting framework. *Id.* Under this framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If met, the burden shifts to the

defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the defendant does so, the burden returns to the plaintiff to prove by a preponderance of the evidence that the defendant's proffered reason is pretextual. *Id.* at 804. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981).

In this case, Defendant argues both that Rooks failed to establish his prima facie showing and that, in any event, its asserted legitimate, nondiscriminatory justification was not pretextual. Because the Court agrees with Defendant that Rooks has not carried his burden at the pretext stage, this Court assumes, without deciding, that Rooks met his *prima facie* showing and "decide[s] this case at the last stage of the *McDonnell Douglas* framework." *Hood-Wilson v. Bd. of Trs. of Cmty. Coll. Of Balt. Cnty.*, 162 F.4th 101, 105 (4th Cir. 2025).

i. Rooks has failed to show Defendant's legitimate justifications are pretextual

Defendant proffers that Rooks had his conditional offer of employment withdrawn following an "unfavorable background check" that was the result of both Rooks' criminal history and a negative reference from a previous employer. *Exhibit 1-E – Withdrawal Letter*, D.E. 51-6; *Memorandum in Support of Motion for Summary Judgment,* D.E. 50, at pp. 13–14. Rooks concedes, and this Court agrees, that this justification is facially a legitimate, nondiscriminatory reason for the withdrawal of his offer of employment. *Plaintiff's Opposition to Summary Judgment*, D.E. 54, at p. 13.

The final step of the *McDonnell Douglas* inquiry asks whether Plaintiff has provided sufficient evidence to allow a reasonable jury to conclude that Defendant's justification was a pretext for disability discrimination. A plaintiff may do so by "show[ing] that an employer's proffered nondiscriminatory reasons for the termination are inconsistent over time, false, or based on mistakes of fact." *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 652 (4th Cir. 2021) (citation modified). "But a finding of pretext is appropriate only where the other evidence of discrimination is sufficiently strong to ensure that the employer is held liable for unlawful discrimination and not merely for inconsistent statements." *Lyons v. City of Alexandria*, 35 F.4th 285, 292 (4th Cir. 2022) (citation modified). Ultimately, "[e]mployers may have multiple, legitimate reasons for their actions." *Id.* And an employer having multiple reasons "does not create the inference of pretext where

there has been no retraction of the employer's reasons . . . nor are any of the employer's reasons inconsistent or conflicting." *Id.* (citation modified).

Rooks' primary contention is that Defendant "has not maintained a consistent explanation" for withdrawing Rooks' offer. D.E. 54, at p. 14. In support of this argument, he points to the following representations by Defendant:

- Withdrawal Letter, D.E. 51-6, stating withdrawal was "based on an unfavorable background check"
- Defendant's EEOC Position Statement, D.E. 54-13, at p. 3, stating the withdrawal was based on "[s]pecifically, a negative reference from another State-correctional agency"
- Defendant's Memorandum in Support of Motion to Dismiss, D.E. 20, at pp. 7–8, stating that Rooks' Assault on a Female conviction and Assault with a Deadly Weapon were both "disqualifying" and were the "actual basis" for the withdrawal
- Defendant's Initial Discovery Responses, D.E. 54-14, at p. 7, which states the withdrawal was "solely as a consequence of [Rooks] receiving the negative reference check"
- Defendant's Supplemental Discovery Responses, D.E. 54-15, at pp. 7–8, adding that Rooks' prior actions while employed with Defendant, quitting via a "no call/no show" contributed to the withdrawal
- Defendant's Memorandum in Support of Motion for Summary Judgment, D.E. 50, at pp. 2, 5–6, 11–12, asserting that Rooks withdrawal was based on an unfavorable background check which is an "umbrella" term that incorporates both his criminal record and unfavorable reference

D.E. 54, at p. 15.

Justifications that appear to be post-hoc rationalizations or inconsistent reasons provided over time may be probative of pretext. *See Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 576 (4th Cir. 2015); *Gary v. Facebook, Inc.*, 822 F. App'x 175, 183 (4th Cir. 2020). But an inference of pretext is raised "where an employer has made *substantial* changes to its proffered reason for discharge over time." *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 225 (4th Cir. 2019) (emphasis added). Inconsistencies are particularly relevant where a party later provides "an *entirely* different reason than was offered initially." *Id.* at 226 (emphasis added). This is because the goal of the pretext inquiry is to hold a defendant liable for "unlawful discrimination and not merely for inconsistent

statements." *Lyons*, 35 F.4th at 292. Here, the purported changes in Defendant's explanation were not substantial, and these record facts are not sufficiently analogous to either *Jacobs* or *Gary*.

In *Jacobs*, the Fourth Circuit noted that the employer's "constellation of justifications," while not inconsistent, were neither "raised at the time of termination" nor documented in any way. 780 F.3d at 576. Plaintiff provided evidence that the document her supervisor referred to as the "contemporaneous reasons for firing" her included reference to her disability and request for accommodation, neither of which were related to the justifications provided throughout litigation. *Id.* Further, one witness testified to having been coached by plaintiff's supervisor before giving her deposition, and the deposition testimony was "significantly implausible." *Id.* at 577.

In *Gary*, plaintiff provided evidence that a supervisor who chose not to promote him had referred to plaintiff using a racial slur. *Gary*, 822 F. App'x at 182. And record evidence conflicted with the defendant's justification that the employee who had been promoted was more qualified, was a better communicator, and had more initiative than plaintiff. *Id.* Moreover, "a substantial basis" for the defendant's argument that the promoted employee had these three traits had come from deposition testimony taken *after* the lawsuit was filed. *Id.* at 183.

Unlike in *Gary*, no offensive remarks were made about Rooks' HIV status. Indeed, unlike *Jacobs* as well, there is no evidence that *any* reference was made about Rooks having HIV or any other condition or disability. None of Defendant's employees discussed his HIV status nor made any notes about it in his files.

Nor is the speed with which Rooks received a withdrawal enough to suggest pretext. The Court acknowledges Rooks' contention that temporal proximity is probative of causation and is therefore probative to a plaintiff's *prima facie* case of disability discrimination. D.E. 54, at pp. 12–13. But temporal proximity does not help Rooks here. The neutral justifications Defendant provided would similarly support an expedient withdrawal of a potential employee's conditional offer. For instance, Rooks' criminal history report was run the morning of March 1, 2023, the same day that Rooks appeared for fingerprinting. *See* D.E. 51-10, at p. 1. And while the reference check took place on February 28th, it was forwarded to Ms. McMillan the morning of March 1st, as well. D.E. 54-10. At this stage, it is not the Court's job to determine which party is right or wrong, but the Court can only draw justifiable inferences in the nonmovant's favor. *Anderson,* 477 U.S. at 255. Here, while

someone could infer that the temporal proximity supports a finding of pretext, they could not *justifiably* do so where defendant's neutral justification is also supported by that same temporal proximity.

Moreover, Rooks was informed at the same time he received his withdrawal letter that the withdrawal was due to an "unfavorable background check." D.E. 51-6. The record reflects that Defendant's hiring specialists have a limited number of explanations they can choose from when rendering employment decisions, and "unfavorable background check" is a label that may incorporate both an uncomplimentary criminal history as well as a negative professional reference. *Exhibit 2 – Declaration of Andrews*, D.E. 51-9, at p. 2. The Court recognizes that this admission comes from a declaration that postdates the filing of the lawsuit, but the phrase "background check" is broad and its ordinary meaning incorporates considerations of professional references and criminal history.[1] The mere fact that Defendant later confirmed as much does not suggest Defendant is engaged in post-hoc justification because "[s]uch explanation of a general reason is insufficient to show pretext." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1332 (11th Cir. 1998).

Rooks argues that Defendant has not remained consistent as to which of the Randolph facility's staff made the decision to withdraw his conditional offer which he contends "creates a jury question as to who actually made the decision and why." D.E. 54, at p. 16. It is not clear how that dispute would be material at the summary judgment stage. No evidence suggests any of the potential decisionmakers were more likely than another to discriminate against Rooks because of his HIV. Even assuming the sole decisionmaker was McMillan, who Rooks alleges was standoffish towards him after reviewing the paperwork containing reference to his HIV status, Rooks' claim would still fail because he has not rebutted Defendant's neutral justifications.

Rooks contends that any reference to his criminal history must be pretextual because he was previously employed by another of Defendant's facilities while he had the same criminal record. *Id*. This argument would have some force if Rooks

---

[1] *See* Background Check, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/background-check [https://perma.cc/GH29-9DLG] (last visited October 1, 2026) (defining "background check" as "an examination of someone's past, especially their education and work history and whether they have ever committed any crime, in order to see if they are suitable for a job or position").

had an otherwise strong application. But here, Rooks applied to a different facility with a staffing shortage after having developed a record of no call/no shows with Defendant. As Ms. McMillan explained, while criminal history is not always disqualifying, it may still be considered when determining if a job offer should be withdrawn. *Exhibit 3 – Declaration of McMillan*, D.E. 51-11, at p. 2. Where a prospective employee's application has materially weakened, it is neither inconsistent nor indicative of pretext for the same criminal history to be considered later, by different people at a different facility, and for the ultimate hiring decision to change.

Rooks further asserts that Defendant has not kept its explanation consistent over time because at various stages of litigation Defendant has said the withdrawal was based "specifically" on the negative reference, then that Rooks' criminal history was the "actual basis" for his disqualification, and then that Rooks' withdrawal was based "solely" on the negative reference check. *See Exhibit M – Defendant's EEOC Position Statement*, D.E. 54-13, at p. 3; *Defendant's Memorandum in Support of Motion to Dismiss*, D.E. 20, at pp. 7–8; *Exhibit N – Defendant's Initial Discovery Responses*, D.E. 54-14, at p. 7. The Court acknowledges that the word "solely" and the phrase "actual basis" have some tension between them, but this does not change the result. At the summary judgment stage, only admissible evidence can be considered when determining if there exists a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(c)(2), (e). And "legal memoranda, unlike pleadings or affidavits, do not generally constitute binding judicial admissions." *N. Ins. Co. of N.Y. v. Balt. Bus. Commc'ns, Inc.*, 68 Fed. App'x 414, 421 (4th Cir. 2003). Without considering the representations made in Defendant's dispositive motions, Defendant has consistently expressed that Rooks' negative employer reference led to his conditional offer being withdrawn. *See* D.E. 51-6; D.E. 54-13, at p. 3; D.E. 54-14, at p. 7; D.E. 54-15, at pp. 7–8.

But even if those representations were admissible evidence, a plaintiff does not survive summary judgment merely by pointing out some tension between a defendant's proffered explanations. At step three in the *McDonnell Douglas* framework, plaintiff's "burden to demonstrate pretext merges with the ultimate burden of persuading the court that the plaintiff has been the victim of intentional discrimination." *Calobrisi v. Booz Allen Hamilton, Inc*, 660 Fed. Appx. 207, 209 (4th Cir. 2016) (citation modified). This requires "other evidence of discrimination [that] is sufficiently strong to ensure that the employer is held liable for unlawful

discrimination and not merely for inconsistent statements." *Lyons,* 35 F.4th at 292 (citation modified).

This Court cannot conclude from the evidence Rooks points to that Defendant has been sufficiently inconsistent in its explanation to create a genuine issue of material fact regarding pretext for a jury to decide. "Employers may have multiple, legitimate reasons for their actions." *Id*. Here, Defendant has consistently represented both that Rooks's criminal history warranted further review as well as the fact that his employment history was problematic given the Randolph facility's staffing needs.

And there is not sufficiently strong "other evidence of discrimination" to give a reasonable jury the ability to find for Rooks. Rooks relies on the fact that McMillan put on gloves during a routine fingerprinting. But it was the standard practice of the facility to use gloves during fingerprinting and McMillan always did so. D.E. 51-11, at p. 3. The use of gloves and any perceived standoffishness by McMillan are not enough to show pretext. Given Rooks's past criminal history and his more recently established record of failing to show up to work without telling his employer, there is not enough evidence for a reasonable jury to find it more likely than not that the neutral reasons Defendant has provided are pretext for discrimination. Therefore, Defendant's motion for summary judgment will be granted with respect to Rooks' first claim.

**B. Rehabilitation Act Claim**

The Fourth Circuit has held that the analysis underlying the application of both the ADA and Section 504 of the Rehabilitation Act is "substantially the same." *Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 750 (4th Cir. 2018). "To the extent possible, [courts] construe the ADA and Rehabilitation Act to impose similar requirements." *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 461 (4th Cir. 2012). Moreover, "Rehabilitation Act claims for discrimination are reviewed under the *McDonnell Douglas* burden-shifting framework." *Hannah P. v. Coats*, 916 F.3d 327, 342 (4th Cir. 2019).

Because Rooks has failed to provide sufficient evidence to rebut Defendant's justification for withdrawing his conditional offer of employment, his Rehabilitation Act claim necessarily fails at the pretext stage of the *McDonnell Douglas* framework, as well. Therefore, Defendant's motion for summary judgment will also be granted with respect to Rooks' third claim.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment as to all remaining counts. D.E. 49. The Court further ORDERS the lawsuit DISMISSED with PREJUDICE

A Judgment dismissing this action will be entered contemporaneously with this Order.

This the 5th day of October, 2026

*/s/ David A. Bragdon*
United States District Judge